UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| GALEN D. THIBODEAU, JR., | : |
| Plaintiff | : |
| | : CIVIL NO. 1:CV-05-2502 |
| vs. | : |
| | : (Judge Caldwell) |
| HARRELL WATTS, ET AL., | : |
| Defendants | : |

*M E M O R A N D U M*

I.      *Introduction.*

On December 5, 2005, *pro se* plaintiff, Galen Darrell Thibodeau, Jr., filed the above-captioned *Bivens*[1] action against Harrell Watts, Administrator of the Bureau of Prisons' ("BOP") National Inmate Appeals; D. Scott Dodrill, Northeast Regional Director; and Troy Williamson, Warden of the Allenwood Federal Correctional Institution for their respective roles in denying Plaintiff's Administrative Remedy.  Thibodeau alleges he was placed into the segregation unit after he received an untimely

---

[1] A *Bivens* claim is a constitutional tort claim named after the case in which the claim was first accepted, *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971).  In *Bivens*, the Supreme Court held that a plaintiff may obtain monetary damages for injuries caused by a federal agent acting "under color of his authority" in violation of a claimant's constitutionally protected rights. (*Id*.) It is the claim against federal officers that is the counterpart to a claim against state officers under 28 U.S.C. § 1983.  *See Egervary v. Young*, 366 F.3d 238, 246 (3rd Cir. 2004).

Unit Discipline Committee ("UDC") hearing, and an administrative-review process that was also procedurally defective.  As relief he seeks reinstatement of the 27 days good-conduct time he lost as a sanction for fighting, expungement of the incident report, and a transfer to a facility closer to his home.

Along with his complaint, Thibodeau filed two applications to proceed *in forma pauperis*. (Docs. 6 and 8). Since Thibodeau is proceeding *pro se*, we will liberally construe his pleading as a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241.  *Haines v. Kerner*, 404 U.S. 519, 520, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972); *see also Tucker v. Carlson,* 925 F.2d 330 (9th Cir. 1991)(to the extent federal prisoner challenged fact or duration of his confinement, *pro se* complaint should be construed as a petition for writ of habeas corpus).

This matter is before the Court for screening.  28 U.S.C. § 2243.  The petition has been given preliminary consideration pursuant to Rule 4 of the Rules Governing Section 2254 Cases in the United States District Courts, 28 U.S.C. foll. § 2254 (1977) (applicable to § 2241 petitions under Rule 1(b)). *See Patton v. Fenton*, 491 F. Supp. 156, 158-59 (M.D. Pa. 1979). Rule 4 may be applied at the discretion of the district court as it is the duty of the court to screen out frivolous applications and eliminate the burden that would be placed on the respondent

by ordering an unnecessary answer.  *Allen v. Perini*, 424 F.2d 134, 141 (6th Cir. 1970).  For the reasons that follow, the petition will be denied.

*II.      Background.[2]*

On June 8, 2005, Thibodeau was placed in FCI-Allenwood's segregation unit after he received an incident report for fighting with another inmate.  He contends that BOP regulations require that he be given an initial hearing before the Unit Discipline Committee ("UDC") within 3 days after staff learn of his involvement in the incident.  In his case, the UDC sought an extension of time from the Warden to hold Thibodeau's hearing at a later date due to an institutionwide lockdown.  The Warden granted the UDC's request.  Petitioner's initial hearing before the UDC was held on June 17, 2005.  Petitioner questions the necessity of the delay in his initial hearing as he witnessed various UDC members made "rounds" in the segregation unit during the period of the lockdown.  Plaintiff did not raise any procedural issues at the time of his UDC or DHO hearings.  Nor did he articulate to the DHO how the delay of the UDC hearing hindered his defense or prejudiced him in any manner.

---

[2] The following factual recitation is gleaned from the Petition and the many documents attached to it.

-3-

Eventually, Thibodeau was found guilty of fighting by a Disciplinary Hearing Officer ("DHO") and sanctioned, *inter alia*, to 30 days disciplinary status and the loss of 27 days good-conduct time credit.

Plaintiff appealed the untimely UDC hearing via the BOP's Administrative Remedy Process.  He does not contest the DHO finding him guilty as he admits to being involved in a fight with another inmate.  The sole basis of his appeal was that his initial hearing before the UDC was held outside of the three-day period. D. Scott Dodrill, the Northeast Regional Director, denied Petitioner's appeal after finding that "the reason for the delay sufficient and expungement of the incident report not warranted." (Doc. 1, Attachment).  Dodrill, however, incorrectly recited the sanctions imposed by the DHO (15 days disciplinary segregation and loss of only 7 days good conduct time) in his response.  (*Id.*)

In Thibodeau's appeal of Dodrill's denial of his administrative-remedy appeal, he again did not argue that he was improperly found guilty of fighting, but rather, took issue with the procedural delay of his UDC hearing.  He also pointed out Dodrill's misstatement of his sanction as another procedural glitch in his administrative-remedy process.  Again, he does not specify how either of these procedural deficiencies impacted his

-4-

defense, or the imposition or service of his loss of good-time credit.  However, he does raise (for the first time), that the DHO took 27 days good-time conduct from him because he believed Thibodeau to be a "VCCLEA Violent"[3] offender, a classification which Plaintiff disputes.  This issue was not raised in his appeal to Regional Director Dodrill.

As permitted by the Administrative Remedy Program, the Central Office Administrative Remedy Coordinator sought additional time to review and respond to Thibodeau's appeal.  The Central Office response to Petitioner's appeal was due on or before October 29, 2005.  Without explanation, Harrell Watts, Administrator of the National Inmate Appeals, did not respond to the appeal until November 4, 2005, six days past the enlarged due date.  In Watts' response he noted that the loss of 27 days good-conduct time was within the range of permitted sanctions for his high category misconduct of fighting irrespective of an inmate's VCCLEA classification.  Watts denied Plaintiff's appeal noting

---

[3] A "VCCLEA" offender is an inmate who, as specified in the Violent Crime Control and Law Enforcement Act of 1994, committed a crime of violence on or after September 13, 1994.  The disciplinary sanction for these inmates is mandated by BOP's Disciplinary policy in some circumstances.  *See* www.bop.gov, Policy Statement 5270.07, Inmate Discipline and Special Housing Units.  This policy requires the disallowance of 50 to 75% of an inmate's good conduct time credit available for that year for VCCLEA inmates committing offenses in the greatest or high offense categories.  Fighting with another person, code 201, is a high category offense.

that "the disciplinary procedures were substantially followed, the greater weight of the evidence supported the DHO's decision, and the sanctions imposed were commensurate to the severity level of the offense and in compliance with the policy."  (Doc. 1, Attachment).

*III.     Discussion.*

The proper mechanism for Thibodeau to challenge his disciplinary proceedings that resulted in the loss of good-time credits is a habeas corpus petition pursuant to 28 U.S.C. § 2241. *See United States v. Eakman*, 378 F.3d 294, 297 (3d Cir.2004); *Moscato v. Fed. Bureau of Prisons*, 98 F.3d 757, 758-59 (3d Cir. 1996).  We hold that Thibodeau's claims of procedural delays in his disciplinary process and administrative remedy process are cognizable in a habeas petition; however, they are without merit. Given Petitioner's admission that he was involved in a fight, albeit he claims he was the victim in the incident, there is more than "some evidence" in the DHO's report to find the prohibited act was committed by Thibodeau.  The sanctions imposed by the DHO were within the range permitted.  Accordingly, the instant petition for writ of habeas corpus will be denied.

> *A. The Delay in Thibodeau's UDC Hearing Did Not Violate His Due Process Rights.*

Unlike a defendant in a criminal trial, a prisoner in a disciplinary proceeding has limited due process rights. *See Wolff v. McDonnell*, 418 U.S. 539, 556, 94 S.Ct. 2963, 2975, 41 L.Ed.2d 935 (1974)("Prison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply."). Where there is a liberty interest at stake, however, such as in disciplinary proceedings where a prisoner is deprived of good-time credits, the inmate is entitled to certain procedural protections. *Id*. Adequate due process protections are afforded prisoners who may lose good-time credits as a result of disciplinary sanctions when they are given: "(1) advance written notice of the disciplinary charges; (2) an opportunity, when consistent with institutional safety and correctional goals to call witnesses and present documentary evidence in his defense; and (3) a written statement by the factfinder of the evidence relied on and the reasons for the disciplinary action." *Superintendent v. Hill*, 472 U.S. 445, 454, 105 S.Ct. 2768, 2773, 86 L.Ed.2d 356 (1985). In addition, a disciplinary decision implicating a prisoner's liberty interest must be supported by at least "some evidence." *Hill*, 472 U.S. at 455, 105 S.Ct. at 2774. The determination of whether the

standard is satisfied merely requires inquiry into "whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." *Id.*

The Bureau of Prisons' inmate disciplinary procedures are codified at 28 C.F.R. § 541, *et seq.*, and entitled, *Inmate Discipline and Special Housing Units.* These procedures are intended to meet or exceed the due process requirements prescribed by the Supreme Court. *See Von Kahl v. Brennan,* 855 F.Supp. 1413, 1418 (M.D.Pa.1994). Pursuant to these regulations, staff shall prepare an Incident Report when there is reasonable belief that a violation of BOP regulations has been committed by an inmate and the staff considers informal resolution of the incident inappropriate or unsuccessful. 28 C.F.R. § 541.14. The incident is then referred to the UDC for an initial hearing pursuant to § 541.15. The UDC hearing is "ordinarily held within three work days from the time staff became aware of the inmate's involvement in the incident" and does not include the initial day staff learns of the incident, weekends or holidays. *See* 28 C.F.R. § 541.15(b). This period may be extended for good cause shown by either the inmate or staff. *See* 28 C.F.R. § 541.15 (k). If the UDC finds that a prisoner has committed a prohibited act, it may impose minor sanctions. If the alleged violation is serious and warrants consideration for more than minor sanctions,

or involves a prohibited act listed in the greatest severity category, the UDC must refer the matter to a disciplinary hearing officer for a hearing.[4]  28 C.F.R. § 541.15.  "The DHO shall give the inmate a written copy of the decisions and disposition, ordinarily within 10 days of the DHO's decision."  28 C.F.R. § 541.17(g).

Construing this *pro se* Petitioner's claims liberally, Thibodeau claims that his delay in the receipt of his initial hearing violated the BOP's regulations and his due process rights.  We do not agree.

Thibodeau received his incident report on Wednesday, June 8, 2005.  The "ordinary" three-day period to conduct his UDC hearing expired on Monday, June 13, 2005.  At that time the facility was in a lockdown and the Warden granted the UDC an extension of time, given the institutional lockdown.  Thibodeau received his UDC hearing four days late on Friday, June 17, 2005.  While the language of the BOP's disciplinary proceedings note that UDC hearings are "ordinarily" held within three days of staff's learning of their involvement in an incident, the regulation also allows for extensions of this time frame for good cause.  In this instance the UDC followed procedures and sought

---

[4] Thibodeau was charged with an offense in the high severity category, fighting with another person.  *See* 28 C.F.R. § 541.13, Table 3.

-9-

an extension from the Warden due to the institutional lockdown. Therefore, the UDC did not violate BOP procedure.

Even if the UDC had not obtained an enlargement of time from the Warden to conduct the hearing on June 17, 2005, the singular challenge to the delay in Petitioner's initial hearing does not automatically equate to a violation of Thibodeau's Due Process rights. *See Flanagan v. Shively*, 783 F.Supp. 922, 931 (M.D. Pa. 1992)("The Constitutition does not require strict adherence to administrative regulations and guidelines.")  The Constitution only requires compliance with minimal federal due process standards protected by the Due Process Clause of the Fourteenth Amendment. *Id. Wolff* does not set a three- or seven-day limit, or any time limit, for the hearing.  No Due Process violation occurred by holding Petitioner's initial hearing outside of the "ordinary" three-day period.

Furthermore, the true measure of whether a due process violation occurred as a result of a delay in Thibodeau's disciplinary process is whether he suffered harm or some form of prejudice as a result. *See Von Kahl v. Brennan,* 855 F.Supp. 1413, 1418 (M.D.Pa. 1994).  This is not a case that Petitioner was denied a hearing before the UDC or DHO.  He does not dispute the DHO's findings based on the reporting officer's eyewitness account that Petitioner and another inmate had been fighting.  He

-10-

simply argues that "procedural issues" were not followed.  (Doc. 1, Complaint).  No where in his Petition does Thibodeau argue that he was harmed, prejudiced or otherwise disadvantaged by the delay in his UDC hearing.  *Von Kahl*, 855 F.Supp. at 1421-1422 ("[T]his court is reluctant to overtax and/or hamstring prison officials' execution of disciplinary policies and procedures by mandating an automatic remand for technical non-compliance with a regulation, absent some showing of prejudice to the inmate.").

Thibodeau does not argue any harm or prejudice suffered as a result of the UDC holding his initial hearing outside of the "ordinary" three-day period.  We find no violation of his Due Process rights associated with this claim, and therefore, deny habeas relief.

> *B. Reporting Inaccuracies and a Delay in Thibodeau's Receipt of his Central Office Administrative Remedy Response Did Not Violate Petitioner's Due Process Rights.*

Thibodeau takes issue with various aspects of his appeal of the DHO's decision via the BOP's Administrative Remedy Process.  Specifically, he claims the Regional Director misstated the sanction imposed by the DHO with respect to the loss of good-time credit, and that the Central Office Administrator's response to his Administrative Remedy appeal was 5 days late.  *See* Doc. 1, Complaint.  Thibodeau, however, does not cite any harm or

prejudice suffered by these procedural defects in his Administrative Remedy Process.  To the extent that he claims that his Due Process rights were violated as a result of these procedural errors, his claim is without merit.  Prisoners do not have a constitutionally protected right to a grievance procedure. See, e.g., *Jones v. North Carolina Prisoners Labor Union*, 433 U.S. 119, 138, 97 S.Ct. 2532, 53 L.Ed.2d 629 (1977) (Burger, C. J., concurring) ("I do not suggest that the [Bureau of Prisons' grievance] procedures are constitutionally mandated."); *Buckley v. Barlow,* 997 F.2d 494, 495 (8th Cir.1993) (per curiam) ("A prison grievance procedure is a procedural right only, it does not confer any substantive right upon the inmates. Hence, it does not give rise to a protected liberty interest requiring the procedural protections envisioned by" the Constitution); *Flick v. Alba,* 932 F.2d 728, 729 (8th Cir.1991) (per curiam)("federal regulations providing for an administrative remedy procedure do not in and of themselves create a liberty interest in access to that procedure.")  Because a prison grievance procedure does not confer any substantive constitutional right upon prison inmates, prison officials' failure to comply with the grievance procedure is not actionable.  Accordingly, Watt's untimely response to Thibodeau's Administrative Remedy Appeal did not violate his Due Process rights.  Habeas relief is not warranted on this claim.

As for Thibodeau's claim that the Regional Director misstated that he only lost 7 days' good-time conduct when in fact he lost 27 days is immaterial given Petitioner's failure to allege how this discrepancy harmed him or otherwise prejudiced him. Absent such allegations, the mere misstatement of his sanction in the context of his administrative remedy is constitutionally deficient.

*IV.     Conclusion.*

As Petitioner does not challenge the DHO's ultimate finding that he was guilty of fighting with another inmate, it is clear that there exists a basis in fact to support the DHO's findings. Based on the foregoing discussion, it is apparent that the delay in Thibodeau's UDC hearing necessitated by an institutional lockdown did not violate his federal due process rights. The petition for writ of habeas corpus will be denied.

We will issue an appropriate order.

                              /s/William W. Caldwell
                              William W. Caldwell
                              United States District Judge

Date: January 11, 2006

UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| GALEN D. THIBODEAU, JR., : | |
| : | |
| Plaintiff : | |
| : | CIVIL NO. 1:CV-05-2502 |
| vs. : | |
| : | (Judge Caldwell) |
| HARRELL WATTS, ET AL., : | |
| : | |
| Defendants : | |

*O R D E R*

AND NOW, this 11th day of January, 2006, for the reasons set forth in the foregoing Memorandum, it is ordered that:

1. Thibodeau's pleading is construed as a petition for writ of habeas corpus filed pursuant to 28 U.S.C. § 2241.

2. The petition for writ of habeas corpus under 28 U.S.C. § 2241 (Doc. 1) is denied for lack of merit.

3. The Court's December 15, 2005, Administrative Order (doc. 9) is VACATED.

4. Petitioner's applications to proceed *in forma pauperis* (docs. 6 and 8) are granted.

5. The Clerk of Court is directed to close this file.

/s/William W. Caldwell
William W. Caldwell
United States District Judge